## GLADISH v. PENNSYLVANIA CO.

(Circuit Court of Appeals, Sixth Circuit. April 2, 1901.)

### No. 883.

MASTER AND SERVANT—INJURIES—RELEASE—FRAUD—EVIDENCE.

Plaintiff sued defendant for injuries sustained while in defendant's employ by its negligence, to which defendant pleaded a release for the sum of $1,500. Plaintiff replied that the release was prepared by defendant, and that, being deaf and unable to read English, plaintiff signed the paper under representations that it contained, in addition to the requirement of payment of $1,500, an agreement to furnish plaintiff with a life position, and that by reason of the failure of the compromise to contain such provision it was invalid, and the minds of the parties never met in any compromise or settlement. At the interview at which the settlement was made, plaintiff was represented by his wife and F., a friend; and, though it appeared that defendant's agent offered to employ plaintiff as long as he behaved himself, he expressly refused to make such provision part of the written contract. Before signing the agreement, F. went into an adjoining room with plaintiff and wife, and read the same to them; and he testified that it was understood that the provision for life employment would not be put in the contract. *Held*, that the evidence was not sufficient to show that plaintiff was deceived in the execution of the settlement, and hence a verdict for defendant was properly directed.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Action by John Gladish against the Pennsylvania Company. From a judgment on a directed verdict in favor of defendant, plaintiff brings error. Affirmed.

Charles A. Thatcher and Orville S. Brumback, for plaintiff in error. Elihu W. Tolerton, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge. Plaintiff brought an action against the Pennsylvania Company in the court below to recover for serious injuries sustained because of the head of a hammer flying from the handle while in use by one of the employés of the defendant, striking the plaintiff upon the head. The ground of recovery was the alleged defective construction of the hammer, furnished in breach of the duty of

the defendant to supply reasonably safe appliances to plaintiff with which to perform his work in its service. The case was disposed of upon an issue made by answer and reply, setting up a release alleged to have been executed by defendant on the 5th day of May, 1899, whereby, in consideration of the sum of $1,500, the defendant was released and discharged from all liability arising from said alleged cause of action. This release purported to be executed by Gladish in the presence of witnesses, and is accompanied by a certificate, also signed by Gladish, that the release was signed after its contents had been made known to him, and that he was fully satisfied therewith. In reply it is alleged: That the defendant, through its superintendent and attorney, persuaded the plaintiff to come to the office of said attorney, who stated that the defendant would pay the plaintiff $1,500, and also give him employment as long as he lived, in settlement of injuries received by him. "And thereupon this plaintiff, relying upon the representations and offer of the said agents of the defendant, did agree to accept the said offer, namely, $1,500 and a life position in the employ of the defendant; and thereupon the paper, a copy of which is attached to the answer of the defendant, was prepared, and this plaintiff was informed by the said agents of the defendant that it contained the terms of compromise so proposed by them and accepted by this plaintiff. And thereupon this plaintiff, being deaf and not being able to read English, did sign said paper under the representations and statement of the agents of the defendant, which this plaintiff then and there believed, to wit, that said paper contained the said terms of said settlement,—that plaintiff would receive the said sum of $1,500 and a life position from defendant in compromise and settlement of said claims against the defendant. This plaintiff further says that he admits that after signing said paper there was paid to this plaintiff the sum of $1,500; but plaintiff says that the defendant, by its attorney and its superintendent, and each of them, repudiated and denied that this plaintiff was to receive any life position, under any circumstances, from the defendant. And so it is that the minds of this plaintiff and the defendant never met in any compromise or settlement whatever."

These allegations of the reply being taken as traversed by the defendant, we have the issue made whether the agreement of settlement in writing was signed by the plaintiff because of the fraudulent conduct of the defendant, by its agents, in informing him (the plaintiff) that it contained the full terms of compromise as agreed to by him, and that the plaintiff, being thus deceived, signed said paper because of the said representations of defendant. The expression in the reply above quoted, concluding the allegations in this respect, "And so it is that the minds of this plaintiff and the defendant never met in any compromise or settlement whatever," is but a statement of the conclusion of the pleader, based upon the previous allegations. The ground of attack upon this written settlement made by the reply of the plaintiff is simply this: An agreement having been made to give the plaintiff life employment as well as the sum of $1,500, he was led, because of his inability to hear, or read the English language, and because of said false representations of the de-

fendant, to believe that said written agreement contained the true contract. In other words, plaintiff charged the defendant with fraud and deceit in obtaining the release. No other issue is made. We are not now dealing with the right which plaintiff might have had, upon his claim of facts, to attack the settlement for mutual mistake, or because of the mistake of one and fraud of the other, except as the same is set up in the reply as above stated. At the conclusion of the testimony, the court, being of opinion that the allegations of the reply had not been sustained by sufficient evidence (remarking in this connection that "if counsel could prove that the agents of the company, or anybody speaking authoritatively for it, represented that the writing contained anything it did not contain, that would be a fraud in law, whatever may have been the intention, and would have set aside this settlement"), and being of the opinion that no such testimony had been adduced, and that the court would be compelled to set aside a verdict for the plaintiff if rendered upon the issue, took the case from the jury. The question before us is, was the court right in so doing? We have examined the testimony, and agree with the court below that there was an entire lack of proof to support the only allegation of fraud which was made in the reply. The testimony discloses that, when the settlement was made, the plaintiff, who unfortunately had been rendered deaf as a result of the injury, and could not speak or understand the English language, was accompanied by his wife and one Mr. Fisher, a member of the same fraternal organization with the plaintiff, whose intervention seemed acceptable to Gladish, and who evidenced a friendly interest in his welfare,— spoken of by the learned judge as a man of intelligence. At this interview these persons were met by Mr. Tolerton, counsel for the company, and later by Mr. Potter, an officer of the company. Fisher, on the application to Mr. Tolerton to put into the agreement the stipulation that Gladish should be given a life position, testifies that Mr. Tolerton said he could not put that into an agreement; that they generally took care of their people who were hurt, and it was understood that they would take care of him. Mr. Potter having been sent for and meeting with the parties, and Fisher having broached the matter to him, Mr. Potter said he would give him a position as long as he behaved himself; further, that Mr. Potter said, as testified to by Fisher, in answer to a question on cross-examination, that he would not make the agreement to employ plaintiff a part of the written agreement. "Mr. Potter said he would not do it; that a man might become intoxicated, and he could hold him to the agreement; if he become a drinking man, he could not discharge him. He would not sign a written agreement." Fisher further says that Mrs. Gladish was present and heard this conversation. It further appears that Mr. Fisher was given the written agreement; that he went into another room with Mr. and Mrs. Gladish, and there read the paper to them. Fisher testifies that at the time when the agreement was read over to Mrs. Gladish, in the presence of Mr. Gladish, "there was one thing said to her that I understood,—the life job would not be put in the contract; but, as I understood it, he was to have a position as long as he behaved himself." Mrs. Gladish testifies as to her

understanding that the paper contained an agreement for life employment, and that she so communicated the matter to her husband. She does not distinctly deny the testimony of Mr. Fisher as to his reading the paper, but rather inferentially gives her understanding of the result of all that took place. Plaintiff also testified that it was his understanding that this paper contained an agreement for a life job. How, then, stands the proof as to the allegation, which was the material one, that the defendant's agents had obtained the execution of the paper by misrepresenting its contents to plaintiff? The testimony fails to maintain this charge. On the contrary, it shows that, when approached by the friend and representative of Gladish, both the attorney and officer of the defendant distinctly declined to put such an agreement into the paper. There is no proof that they made a misrepresentation of the contents of the paper to plaintiff. If the plaintiff was deceived by his own agent or wife as to the contents of the paper, without the connivance or knowledge of the defendant or its agents, such charge would fail to support the allegations of the plaintiff. Upon the issue made, we agree with the learned trial judge that, had the verdict been returned in plaintiff's favor, it should have been set aside for lack of supporting testimony.

Other questions were discussed in the argument, but the case turns upon the one just disposed of. Finding no error in the action of the court below, the judgment will be affirmed.